IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PAUL DAVID SCHULTZ,                )
                                   )
            Appellant,             )
                                   )
    v.                             )        1:25-cv-322 (LMB/IDD)
                                   )
MATTHEW W. CHENEY,                 )        No. 24-11959 (KHK)
                                   )        (Chapter 11)
            Appellee.              )

## MEMORANDUM OPINION

Appellant Paul David Schultz ("Schultz"), proceeding pro se,[1] appeals a February 13, 2025, Order entered by the United States Bankruptcy Court for the Eastern District of Virginia converting Schultz's bankruptcy case from a Chapter 11 proceeding to a Chapter 7 proceeding ("Conversion Order").  Schultz argues that his Chapter 11 petition was filed in good faith, that his violation of court orders does not constitute cause for dismissal or conversion, and that the bankruptcy court erred in converting his case because he had enough assets to pay his creditors.  Appellee Matthew W. Cheney ("U.S. Trustee") argues that the Conversion Order should be affirmed because the bankruptcy judge correctly found cause to dismiss or convert and concluded that conversion, rather than dismissal, best served the interests of the creditors and the bankruptcy estate.  For the reasons discussed in this Memorandum Opinion, the Court will affirm the bankruptcy court's decision.

---

[1] Attorney Jeffrey T. Martin ("Martin") filed Schultz's Notice of Appeal and opening brief but filed a Motion to Withdraw as Counsel on May 14, 2025, [Dkt. No. 8], which this Court granted on May 21, 2025, [Dkt. No. 10].  Since Martin's withdraw, Schultz has proceeded pro se.

I.

On June 3, 2024, Schultz, acting pro se, filed a Chapter 13 petition,[2] just days before a foreclosure auction was to occur on his Redhill Manor property, which secured Schultz's loan from creditor Clear Sky Financial, LLC ("Clear Sky"). [UST001, 430].[3] Schultz's filing resulted in an automatic stay which halted the auction. See Houck v. Substitute Tr. Servs. Inc., 791 F.3d 473, 480 (4th Cir. 2015) ("[T]he filing of a bankruptcy petition operates immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate.").

At the time of his Chapter 13 filing, Schultz owned two non-publicly traded entities, New Dominion Enterprises, Inc. and Vincere Holdings, LLC.[4] [UST019]. He also owned three properties: 18436 Kapalua Terrace in Loudoun County ("Kapalua Terrace"), 22597 Redhill Manor Court in Loudoun County ("Redhill Manor"), and 9036 Jeffrey Road in Fairfax County ("Jeffrey Road").[5] [UST015–16]. In his Chapter 13 schedules, Schultz reported 16 creditors with claims against him, totaling $2,721,016.62. [UST026–33].

| Creditor | Claim Amount | Secured or Unsecured |
|---|---|---|
| Clear Sky Financial, LLC | $1,100,000 | Secured by Redhill Manor |
| Decisive Investment Group | $1,050,000 | Secured by Jeffrey Road |
| JTCC | $25,000 | Secured by Jeffrey Road |
| BOK Financial | $370,565.55 | Secured by Kapalua Terrace |

[2] In re Paul David Schultz, No. 24-11033-BFK. Schultz proceeded pro se throughout his Chapter 13 case.

[3] Citations to "UST___" refer to the appendix of the U.S. Trustee's brief. See [Dkt. No. 9-1].

[4] New Dominion Enterprises, Inc. filed a Chapter 11 petition in the bankruptcy court on February 6, 2025. In re New Dominion Enters., Inc., No. 25-10224-KHK. It was dismissed on April 1, 2025.

[5] Jeffrey Road was owned by New Dominion Enterprises, Inc., but Schultz was personally liable as a guarantor for all debts secured by Jeffrey Road. [UST016, 94].

| Bank of America, N.A. | $93,269.87 | Secured by Kapalua Terrace |
|---|---|---|
| County of Loudon | $3,235.07 | Secured by Redhill Manor |
| Fairfax County Department of Tax Admin. | $11,387.79 | Secured by Jeffrey Road |
| River Creek Owners Association | $5,800 | Secured by Kapalua Terrace |
| Virginia Tax – Office of Customer Services | $12,000 | Unsecured |
| American Express | $2,053.03 | Unsecured |
| Capital One | $12,209.67 | Unsecured |
| USAA Federal Savings Bank | $4,528.88 | Unsecured |
| Laurel Springs School | $10,917 | Unsecured |
| Redhill Manor HOA | $2,677.50 | Unsecured |
| Ricky Horseman | $11,000 | Unsecured |
| River Creek Club | $6,372.26 | Unsecured |

He also reported generating an average monthly income of $231.39 from working as an Uber driver and operating the two businesses. [UST038, 54, 57]. Because his monthly expenses totaled $19,215.34,[6] Schultz ran a monthly deficit of $18,983.95. [UST042].

Under Schultz's Chapter 13 plan, he proposed to pay the Chapter 13 trustee $4,000 per month for 36 months toward his unsecured debts and $17,564.83 per month to various creditors with secured claims. [UST061, 63–64]. He also proposed to pay nothing on a $1.6 million claim held by Clear Sky, asserting that he would avoid its lien by claiming "fraud." [UST065]. Because the proposed payments exceeded Schultz's income and would have been insufficient to satisfy the statutory requirements for a confirmable Chapter 13 plan, the Chapter 13 trustee and three of Schultz's creditors objected to confirmation of the proposed plan. [UST074–82, 127–28]. The Chapter 13 trustee also moved to dismiss the case because Schultz failed to make plan payments pursuant to 11 U.S.C. § 1307(c)(1), which provides that a bankruptcy court may "dismiss a case" for "unreasonable delay by the debtor that is prejudicial to creditors."

---

[6] The $19,215.34 of monthly expenses included $14,600.84 in mortgage payments for Kapalua Terrace, Redhill Manor, and Jeffrey Road. [UST015–16, 26–28, 40–41].

3

[UST011–12]. The bankruptcy court agreed with the trustee and dismissed the Chapter 13 case on August 9, 2024. [UST130].

Schultz did not appeal that dismissal. Instead, two months later, on October 21, 2024, acting pro se, he filed a Chapter 11 petition,[7] which is the petition at issue in this appeal. [UST133]. Along with that petition, Schultz did not file any schedules, explaining that his financial situation had not changed since filing his Chapter 13 petition. [UST423]. The bankruptcy court entered a Consent Order Conditioning Rights of Debtor in Possession ("Consent Order") instructing Schultz to "file with the [bankruptcy court], not later than the 21st of each month for the preceding calendar month . . . verified statements of cash flow, and if the debtor is operating any business, statements of profit and loss, in compliance with the format established by the United States Trustee" ("Monthly Operating Reports"). [UST149]. The Consent Order also required the "debtor or the individual designated by the Court as the representative of the debtor" to "attend all hearings in the case" unless "first excused by the Court." Id.

On November 26, 2024, the Chapter 11 trustee filed a Motion to Dismiss or Convert asserting that cause to dismiss or convert existed pursuant to 11 U.S.C. § 1112(b) for three reasons. [UST151]. First, the trustee argued that Schultz failed to comply with the Consent Order because he had not timely filed the October 2024 Monthly Operating Report, which was

---

[7] In re Paul David Schultz, No. 24-11959-KHK, Dkt. No. 1. Schultz proceeded pro se in his Chapter 11 case until Martin entered an appearance on December 17, 2025. Martin represented Schultz in the Chapter 11 case until the bankruptcy court granted Martin's Motion to Withdraw on May 9, 2025, after Martin had filed the Notice of Appeal, [Dkt. No. 1], and opening brief, [Dkt. No. 6], in this appeal. On May 14, 2025, Martin filed a Motion to Withdraw as Counsel in this appeal, [Dkt. No. 8], which this Court granted on May 21, 2025, [Dkt. No. 10]. Since Martin's withdraw, Schultz has been acting pro se.

due on November 21, 2024. [UST153]. Second, the trustee contended that Schultz failed to comply with Bankruptcy Rule 2015.3, which required Schultz, as a debtor having a substantial interest in non-publicly traded corporations, to file a financial report no later than seven days before the October 21, 2024, creditor meeting. Id. Finally, the trustee asserted that there was a substantial or continuing loss or diminution of the estate and an absence of a reasonable likelihood of rehabilitation.[8] Id.

Schultz, now acting through counsel, opposed the Motion to Dismiss or Convert, claiming that the Monthly Operating Reports were "being finalized" and that he "fully intend[ed] to submit a confirmable plan of reorganization within the time period specified in the Bankruptcy Code," [UST182–83]; however, he failed to file both the November 2024 and December 2024 Monthly Operating Reports on time. He eventually filed the November 2024 Monthly Operating Report on January 8, 2025, 18 days after the due date, [UST184], but he did not file the October 2024 and December 2024 Monthly Operating Reports until February 11, 2025, the morning of the hearing on the trustee's Motion to Dismiss or Convert. [UST201, 217, 432].

At that hearing,[9] the bankruptcy court first found cause to dismiss or convert because Schultz's Chapter 11 petition was "futile and was filed in subjective bad faith." [UST433]. This finding was based on Schultz's having filed the Chapter 11 petition "just to continue to hinder and delay the creditor Clear Sky from completing foreclosure," given that Schultz's financial

---

[8] The record reflects that Redhill Manor sat "vacant and blighted" with "no garage doors, allowing unrestricted access for any individual to vandalize the Property or endanger themselves." [UST240]. There were also several broken windows, "allowing intrusion of water and the development of mold and other damage." Id. Finally, Schultz had "allowed all insurance on [Redhill Manor] to lapse, including property and liability coverage." Id.

[9] Martin appeared on behalf of Schultz, but Schultz himself did not appear. [UST419].

situation had not improved since he filed his Chapter 13 petition. [UST431–32]. The court also found cause based on Schultz's failure to file Monthly Operating Reports on time as required by the Consent Order. [UST432]. Concluding that conversion, not dismissal, would best serve the interests of the creditors and the estate based on the need for "supervision of the assets," [UST433], the bankruptcy court entered its Order Converting Case to Chapter 7 on February 13, 2025, [UST389].

Acting through counsel, Schultz promptly filed a Notice of Appeal citing the only order on appeal as the "Order Granting Motion to Convert Case to Chapter 7." [Dkt. No. 1] at 1. Schultz, still acting through counsel, filed his opening brief, focusing exclusively on whether the bankruptcy court erred in dismissing Schultz's counterclaim against Clear Sky in the adversary proceeding. [Dkt. No. 6]. Both the U.S. Trustee and Clear Sky have filed responsive briefs, [Dkt. Nos. 9 & 11], and Schultz, now proceeding pro se, has filed a reply, [Dkt. No. 29].

On October 29, 2024, one week after Schultz filed his Chapter 11 petition, Clear Sky commenced an adversary proceeding against Schultz in the bankruptcy court seeking to "affirm the validity of its Loan and liens and its right to proceed with foreclosure."[10] [UST179]. Clear Sky alleged that it had provided Schultz with a private loan secured by Redhill Manor to fund "unanticipated rehab costs" related to "COVID disruption" to Schultz's fix-and-flip business. [UST156]. Specifically, Clear Sky alleged that it provided the loan for the commercial purpose of renovating Jeffrey Road; however, instead of using the funds for "'commercial' rehab,"

---

[10] Clear Sky Fin., LLC v. Schultz, No. 24-1058-KHK. An adversary proceeding is a "full civil lawsuit[] carried out under the umbrella of the bankruptcy case." See Bullard v. Blue Hills Bank, 575 U.S. 496, 505 (2015). Martin represented Schultz from approximately December 13, 2024, when Martin filed an Answer and Counterclaim on Schultz's behalf, to May 9, 2025, when the bankruptcy court granted Martin's Motion to Withdraw. Therefore, Schultz was represented by counsel during the entire time the bankruptcy court was considering his counterclaim.

Schultz misused the money for personal and household purposes, such as paying his Kapalua Terrace home mortgages and his child's private school tuition. [UST156–57].

In response, Schultz, acting through counsel, asserted a counterclaim contending that the loan from Clear Sky was "illegal and unenforceable" because Clear Sky was "unlicensed" under Virginia consumer lending law. [UST169]. Clear Sky filed a Motion for Summary Judgment and to Dismiss Counterclaims, arguing that the loan was a commercial loan excluded from Virginia's restrictions on mortgage loans. [UST169–70, 79]. The bankruptcy court granted Clear Sky's Motion for Summary Judgment and to Dismiss Counterclaims on February 7, 2025, [UST386], six days before the bankruptcy court issued its Conversion Order. As of the time Schultz's appeal of the Conversion Order was fully briefed, Schultz had not noticed an appeal of the bankruptcy court's dismissal of his counterclaim against Clear Sky.[11]

II.

An individual filing for bankruptcy protection must choose between liquidation (Chapter 7) and reorganization (Chapters 11 and 13). See Tidewater Fin. Co. v. Williams, 498 F.3d 249, 252 & n.1 (4th Cir. 2007). Liquidation requires the debtor to surrender all his pre-petition assets to a trustee, who then liquidates those assets and distributes them to creditors. Harris v. Viegelahn, 575 U.S. 510, 512–13 (2015). Reorganization, on the other hand, allows the debtor to retain his assets if he proposes an acceptable plan to repay his debts over time. Id. at 512.

11 U.S.C. § 1112(b) addresses the dismissal of Chapter 11 petitions and the conversion of Chapter 11 proceedings to Chapter 7 proceedings. The statute provides, in relevant part, that "on

---

[11] Schultz's appeal of the Conversion Order was fully briefed by June 12, 2025. Schultz filed a Notice of Appeal in the adversary proceeding 25 days later, on July 7, 2025. Clear Sky Fin., LLC v. Schultz, No. 24-1058-KHK, Dkt. No. 52.

request of a party in interest, and after notice and a hearing, the court shall convert a case under

[Chapter 11] to a case under [C]hapter 7 or dismiss a case under [Chapter 11], whichever is in

the best interests of creditors and the estate, for cause unless the court determines that the

appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors

and the estate." 11 U.S.C. § 1112(b)(1). Both dismissal and conversion cut short reorganization

efforts; however, conversion transforms the case to a liquidation proceeding, and dismissal

results in closing the case, leaving "the debtor vulnerable to the full extent of a creditor's rights

under state law." In re Patton, 209 B.R. 98, 104 (Bankr. E.D. Tenn. 1997).

The Fourth Circuit has established a two-step process for determining whether to dismiss

or convert a Chapter 11 petition pursuant to § 1112(b). In re Superior Siding & Window, Inc.,

14 F.3d 240, 242 (4th Cir. 1994). First, the bankruptcy court must determine whether "cause"

exists either to dismiss or to convert the Chapter 11 proceeding. Id. Section 1112(b)(4) sets

forth a non-exhaustive list of what constitutes cause, including "substantial or continuing loss to

or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "failure

to comply with an order of the court," and "unexcused failure to satisfy timely any filing or

reporting requirement established by this title or by any rule applicable to a case under this

chapter." Filing for Chapter 11 relief in bad faith also constitutes cause under § 1112(b). See

Carolin Corp. v. Miller, 886 F.2d 693, 699 (4th Cir. 1989); In re Superior Siding & Window,

Inc., 14 F.3d at 242.

Second, if the bankruptcy court determines that cause exists to dismiss or convert a

Chapter 11 proceeding, it must then determine whether dismissal or conversion to a Chapter 7

proceeding would best serve the interests of the creditors and the bankruptcy estate. 11 U.S.C.

§ 1112(b)(1); In re Superior Siding & Window, Inc., 14 F.3d at 242. Courts in this district have

8

referred to various factors in deciding whether to dismiss or convert, including "whether there would be a loss of rights granted in the case if it were dismissed rather than converted," "the ability of the trustee in a chapter 7 case to reach assets for the benefit of the creditors," and "whether conversion or dismissal would maximize the estate's value as an economic enterprise." Askri v. Fitzgerald, 612 B.R. 500, 505 (Bankr. E.D. Va. 2020) (citing 7 Collier on Bankruptcy § 1112.04[7]). The debtor's interests are immaterial to a bankruptcy court's decision of whether to dismiss or convert. Lakefront Invs. LLC v. Clarkson, 484 B.R. 72, 84–85 (Bankr. D. Md. 2012), aff'd sub nom. Lakefront Invs., LLC v. Sydnor, 520 F. App'x 221, 222 (4th Cir. 2013).

District courts have jurisdiction over appeals from bankruptcy courts with respect to final orders, including conversion orders. 28 U.S.C. § 158(a)(1); see In re Fraidin, 1997 WL 153826, at *1 (4th Cir. Apr. 3, 1997) (stating that the "conversion order was immediately appealable"). A district court reviews a conversion decision for abuse of discretion. In re Superior Siding & Window, Inc., 14 F.3d at 242. A bankruptcy court abuses its discretion "when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises." United States v. Henry, 673 F.3d 285, 291 (4th Cir. 2012).

### III.

The bankruptcy court first found cause to dismiss or convert based on Schultz's bad faith filing of his Chapter 11 petition. [UST430–33]. In the Fourth Circuit, a debtor's "lack of good faith in filing a Chapter 11 petition requires a showing of 'objective futility' and 'subjective bad faith.'" In re Premier Auto. Servs., Inc., 492 F.3d 274, 279–80 (4th Cir. 2007) (quoting Carolin Corp., 886 F.2d at 700–01). In determining whether there is subjective bad faith, the Court must examine "whether a Chapter 11 petition is motivated by an honest intent to effectuate

9

reorganization or is instead motivated by some improper purpose," id. at 280, such as "to abuse the reorganization process" or "to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay." Carolin Corp., 886 F.2d at 702 (citation omitted). To determine objective futility, the Court must consider whether "there exists the realistic possibility of an effective reorganization." Id. (cleaned up).

With respect to the subjective inquiry, the bankruptcy court correctly concluded that Schultz was not motivated by an honest intent to effectuate reorganization in filing his Chapter 11 petition. Specifically, because Redhill Manor was the "only . . . property remaining" in the Chapter 11 case and was "owned by the debtor in his personal name and valued at $800,000, with a secured debt to Clear Sky of $1.6 million," the court found that Schultz filed his Chapter 11 petition "just to continue to hinder and delay the creditor Clear Sky from completing foreclosure" on Redhill Manor. [UST431]. In fact, Schultz's counsel explicitly stated that "[t]his case was definitely filed by the debtor to stop a foreclosure on the property. There was no question about that." [UST423]. Hindering foreclosure is an improper purpose because, as the Fourth Circuit has emphasized, "[h]olding an asset hostage is not a permissible use of the bankruptcy process," and "Chapter 11 is not a procedural vehicle which may be commandeered solely for 'the purpose of invoking [its] automatic stay.'" In re Premier Auto. Servs. Inc., 492 F.3d at 281 (quoting Carolin Corp., 886 F.2d at 702). In response, Schultz argues that he "reasonably sought Chapter 11 protection to litigate the extent and enforceability of Clear Sky's lien," [Dkt. No. 29] at 3; however, this argument is unavailing because the Fourth Circuit has rejected using litigation itself as the "plan for reorganization." In re Premier Auto. Servs., Inc., 492 F.3d at 280. In sum, given the record evincing Schultz's clear attempt to delay foreclosure,

the bankruptcy court did not abuse its discretion in finding that Schultz's Chapter 11 petition was motived by an improper purpose.

With respect to the objective inquiry, the record supports the bankruptcy court's finding that there was no "realistic possibility of an effective reorganization." Carolin Corp., 886 F.2d at 698. Specifically, the court found that Schultz's Chapter 11 petition was "going nowhere" because Schultz reported a "negative income to the tune of 18,000 dollars a month in shortfall," had not made any progress on refinancing "for over a year," and had not improved his financial situation since his Chapter 13 petition was dismissed based on his "failure to make planned payments." [UST431–33]. Because there was no evidence before the bankruptcy judge when she issued her decision showing a possible mechanism by which Schultz could achieve legitimate reorganization, "the Chapter 11 effort ha[d] lost its raison d'être." Carolin Corp., 886 F.2d at 698 (quoting In re Winshall Settlor's Tr., 758 F.2d 1136, 1137 (6th Cir. 1985)).

Schultz contends that the bankruptcy court erred in dismissing his counterclaim in the adversary proceeding, and had the court correctly interpreted Virginia law, Clear Sky's "lien would have been discarded and Appellant would have been able to use the full proceeds from the sale of the disputed property to successfully fund a reorganization plan." [Dkt. No. 6] at 5. In other words, Schultz argues that absent Clear Sky's loan, there would have been a realistic possibility of effective reorganization. This argument is unavailing. As an initial matter, this appeal is an improper avenue for obtaining relief from the bankruptcy court's dismissal of Schultz's counterclaim in the adversary proceeding because the Notice of Appeal cited the only order on appeal as the "Order Granting Motion to Convert Case to Chapter 7." [Dkt. No. 1] at 1. Moreover, even if Schultz could avoid Clear Sky's loan, his Chapter 11 petition was still futile. Schultz reported generating a net monthly income of $231.39, but to continue in Chapter 11, he

11

would have had to pay a statutory fee of at least $250 every quarter until the case was converted, dismissed, or closed. 28 U.S.C. § 1930(a)(6). Additionally, without Clear Sky's claim, Schultz would still have had to make monthly payments of $12,100 to his other secured creditors. See [UST064]. Accordingly, Schultz's attempt to litigate the validity of Clear Sky's loan in this appeal does not overcome the bankruptcy court's finding of futility. Given both the subjective bad faith and objective futility of Schultz's Chapter 11 petition, the bankruptcy court did not abuse its discretion in finding cause based on bad faith.

The bankruptcy court also found that Schultz's failure to comply with the Consent Order supports dismissal or conversion under 11 U.S.C. § 1112(b)(4)(E). The Consent Order required Schultz to file timely Monthly Operating Reports, [UST149], but he failed to do so. The October 2024 Monthly Operating Report was due on November 21, 2024, but was not filed until February 11, 2025. [UST201]. The November 2024 Monthly Operating Report was due on December 21, 2024, but was not filed until January 8, 2025. [UST184]. And the December 2024 Monthly Operating Report was due on January 21, 2025, but was not filed until February 11, 2025. [UST217]. The bankruptcy judge found it particularly troubling that Schultz filed both the October 2024 and December 2024 Monthly Operating Reports on the morning of the hearing on the Motion to Dismiss or Convert, stating that she "abhor[s] receiving MORs the day before or the day of the hearing." [UST432]. Courts have regularly held that failure to file timely monthly operating reports as required by bankruptcy court orders constitutes cause. See In re Landmark Atl. Hess Farm, LLC, 448 B.R. 707, 713 (Bankr. D. Md. 2011); In re Congaree Triton Acquisitions, LLC, 492 B.R. 843, 854 (Bankr. D.S.C. 2012). Moreover, Schultz's argument that "[l]ate filings and administrative errors, especially under pro se or underrepresented circumstances, do not necessarily justify conversion," [Dkt. No. 29] at 5, is

12

meritless because Schultz was represented by counsel during the time he was required to file the Monthly Operating Reports. See [UST419]. Therefore, on this record, the bankruptcy court did not abuse its discretion in finding cause to dismiss or convert based on Schultz's failure to timely file Monthly Operating Reports in accordance with the Consent Order.[12]

Turning to whether conversion was proper, the bankruptcy court did not abuse its discretion in deciding that conversion to a Chapter 7 proceeding, rather than dismissal, would best serve the interests of the creditors and the bankruptcy estate. See 11 U.S.C. § 1112(b)(1). Specifically, the court found that conversion was appropriate because the "creditors would be best served by supervision of the assets here" based on the poor condition of Redhill Manor and Schultz's monthly deficit of $18,983.95. [UST421, 28, 33]. Given that the only "property remaining in this case" was "valued at $800,000," and that property secured a debt to Clear Sky of $1.6 million, [UST431], the bankruptcy court properly found that there "would be a loss of rights granted in the case if it were dismissed rather than converted." Askri, 612 B.R. at 505 n.10 (quoting 7 Collier on Bankruptcy § 1112.04[7]).

Schultz complains that the bankruptcy court should have made "individualized findings regarding creditors other than Clear Sky" and failed to "assess the broader creditor body's interests" before deciding to convert, rather than dismiss, the petition. [Dkt. No. 29] at 9.

---

[12] The U.S. Trustee's brief lists additional, independent grounds for finding cause, including Schultz's alleged failure to file bankruptcy schedules and Rule 2015.3 reports, the continuing loss to the bankruptcy estate, and Schultz's failure to personally attend hearings. As an initial matter, it is unclear from the Consent Order whether Schultz was personally required to attend hearings. See [UST419] (requiring the "debtor or the individual designated by the Court as the representative of the debtor" to "attend all hearings in the case" (emphasis added)). Although the bankruptcy court did not cite these additional grounds, the record shows that—aside from Schultz's failure to personally attend hearings—they also support the bankruptcy court's decision.

Although the bankruptcy court's explanation regarding its decision to convert the Chapter 11 petition was brief, bankruptcy courts need not give exhaustive reasons for their decisions. See In re Koerner, 800 F.2d 1358, 1368 (5th Cir. 1986) ("The bankruptcy judge is not required to give exhaustive reasons for his [§ 1112(b)] decision."); In re Fossum, 764 F.2d 520, 521–22 (8th Cir. 1985) (holding the bankruptcy court's one line statement in support of its decision to dismiss a chapter 11 case, which "could have been more detailed and more direct," was sufficient). Given the evidence in the record of a clear need to supervise Schultz's assets, the bankruptcy court did not abuse its discretion in deciding to convert rather than dismiss this case.

IV.

For the reasons stated above, the bankruptcy court's Conversion Order will be affirmed by an Order to be issued with this Memorandum Opinion.

Entered this 24 day of September, 2025.

Alexandria, Virginia

/s/ _YmB_

Leonie M. Brinkema
United States District Judge